IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT JOHNSON,                       :
                                      :      Civil No.: 1:13-CV-1683
            **Plaintiff**             :
                                      :
      v.                              :
                                      :
PREDATOR TRUCKING, LLC; and           :
MICHAEL PAREJA,                       :
                                      :      Judge Sylvia H. Rambo
            **Defendants**            :

# M E M O R A N D U M

In this civil action invoking this court's diversity jurisdiction, Plaintiff

has sued Defendants for injuries allegedly sustained as a result of an incident

involving a tractor and trailer allegedly operated by Defendant Pareja and owned by

Defendant Pareja's employer, Defendant Predator Trucking.  Presently before the

court is Plaintiff's motion to compel.  For the reasons stated herein, Plaintiff's

motion (Doc. 17) will be granted in part and denied in part.

## I.        Background[1]

Plaintiff filed a complaint against Defendant Pareja sounding in

negligence (Count I), and against Defendant Predator Trucking sounding in

negligence based on vicarious liability (Count II) and negligent

hiring/retention/supervision (Count III).[2]  (Doc. 1.)  The parties are currently

engaged in fact discovery, which is set to conclude on June 16, 2014.  (*See* Doc. 15.)

---

[1]  Because the court writes primarily for the parties, it will only outline the background essential to this memorandum.

[2]  A motion for leave to file an amended complaint is pending.  The motion seeks to amend Plaintiff's complaint by adding two additional counts and one additional defendant, *inter alia*.

This case concerns an accident that occurred on January 3, 2012, at Beck Aluminum Alloy LTD's recycling center, located within the Middle District of Pennsylvania. Defendant Pareja, employed by Defendant Predator Trucking, was operating a vehicle, owned by Defendant Predator Trucking. The vehicle had been backed into the Beck Aluminum facility as the freight was being unloaded. Defendant Pareja allegedly caused the vehicle to move forward, which resulted in the rear tires of the trailer to strike Plaintiff, who was operating a forklift near Defendant Pareja's vehicle. Plaintiff allegedly suffered serious injuries as a result of the incident.

The motion *sub judice* concerns various documents that Defendants have refused to produce during the course of discovery. The court has previously disposed of several issues previously raised. (*See* Doc. 20.) Pertinent to the outstanding dispute, Plaintiff requests[3] that the court order Defendants to produce: 1) the complete set of Michael Pareja's Driver's Logs from December 15, 2011, through January 18, 2012; 2) certain photographs taken following the incident, including a set depicting a re-enactment of the incident and a set included in a report by Defendant Predator Trucking's insurance adjuster; 3) Defendant Predator Trucking's insurance adjuster's report, dated March 10, 2012; 4) the claim file of Defendant Predator Trucking's insurance adjuster pertaining to the January 3, 2012 incident; 5) documentation of safety training, courses, certifications, and internal safety policies and materials; 6) information pertaining to electronic communication

---

[3] As is not uncommon when litigating matters presented by zealous and clearly capable attorneys, the exact parameters of Plaintiff's motion to compel have become somewhat muddled through the parties' artful – yet cautious – brief writing. To the extent the court fails to address an issue that has already been raised in the motion to compel, Plaintiff is invited to advise the court of its oversight.

devices in Defendant Pareja's tractor at the time of the incident; and 7) DOT audits

and exit reports for Defendant Predator Trucking, created from January 2007 to the

present.[4]  (*See* Docs. 17, 18 & 23.)  Pursuant to the court's order dated December 12,

2013, Defendants have submitted the outstanding documents to the court for an *in

camera* review.[5]

## II.        Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the

scope and limitations governing the use of discovery in a federal civil action:

> Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense –
> including the existence, description, nature, custody,
> condition, and location of any documents or other tangible
> things and the identity and location of persons who know
> of any discoverable matter.  For good cause, the court may
> order discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not be
> admissible at trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Issues relating to the scope of discovery permitted under

the Rules rest in the sound discretion of the court. *Wisniewski v. Johns-Manville*

---

[4]  As highlighted by Defendants in their duly authorized sur-reply, the argument concerning the DOT Audits was raised for the first time in Plaintiff's reply brief.  Although the court agrees that a reply brief is an inappropriate mechanism in which to raise new arguments or requests, it will exercise its discretion applicable to its ability to oversee discovery and overrule any objection raised by Defendants to the request based on this procedural technicality.

[5]  Defendants submitted Defendant Pareja's logs from December 26, 2011, through January 31, 2012, despite the court's order specifically directing Defendants to "submit Defendant Pareja's driver logs from *December 15, 2011, to January 18, 2012* . . . to the court for an *in camera* review." (Doc. 20, ¶ 3.)  The court assumes this was either an innocent oversight or due to the nonexistence of the logs for the eleven days preceding December 26, 2011.

*Corp.*, 812 F.2d 81, 90 (3d Cir. 1987).  This discretion is guided, however, by certain basic principles.  Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense."  Therefore, valid claims of privilege still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information," a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The party resisting production bears the burden of establishing lack of relevancy, and must demonstrate that the requested documents either do not come within the broad scope of relevancy defined under subsection (b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad disclosure.  *Continental Life Ins. Co. v. Shearson Lehman Hutton, Inc.*, Civ. No. 88-cv-9279, 1990 WL 209290, *2 (E.D. Pa. Dec. 13, 1990).

The work product protection, which derives from Federal Rule of Civil Procedure 26(b)(3), states that "documents and tangible things otherwise discoverable," but which were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" are not discoverable.  *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127 (E.D. Pa. 1994).  The party asserting the work product protection has the burden of demonstrating that the documents were "prepared in anticipation of litigation," *Conoco, Inc. v. United States Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

The mainstay of work product protection, and the gravamen of the instant dispute, lies in the deceivingly simple phrase, "in anticipation of litigation."  To determine whether a document was "prepared in anticipation of litigation," the appropriate inquiry is "whether in light of the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 148 (D.N.J. 1997).  Litigation need not be imminent as long as the main purpose behind the creation of the document was to aid in future litigation; however, the mere possibility of future litigation is insufficient to meet the "in anticipation of litigation" standard.  *Leonen v. Johns-Manville*, 135 F.R.D. 94, 97 (D.N.J. 1990); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990).  Thus, a document that was prepared "in the ordinary course of business" may not be found to have been prepared in anticipation of litigation.

## III.        Discussion

At the outset, the court notes that several of the aforementioned requested materials are no longer in dispute.  Specifically, based on Defendants' representations in their sur-reply, Defendants have fulfilled Plaintiff's requests pertaining to documentation of safety training, courses, certifications, and internal safety policies and materials and information pertaining to electronic communication devices in Defendant Pareja's tractor at the time of the incident.

### A.   Defendant Pareja's Driver's Logs

Plaintiff requested that Defendants produce Defendant Pareja's Driver's Logs from December 15, 2011, through January 3, 2012.[6]   Defendants objected on the basis of relevancy, arguing that the Federal Motor Carrier Safety Provisions require a commercial driver to retain a copy of his logs for only the previous seven consecutive days.  Defendants reason that anything beyond seven days preceding the January 3, 2012 incident is irrelevant.  Defendants, as the objecting party, have failed to sustain their burden in demonstrating the additional Driver's Logs lack relevancy.

At this stage of the litigation, the court will exercise its discretion in accordance with the broad scope of discovery.  While the court questions whether Defendant Pareja's Driver's Logs for December 15, 2011, through December 26, 2011, will be admissible as relevant in and of themselves, the court cannot definitively conclude that such evidence will not lead to the discovery of admissible evidence.  Accordingly, Defendants will be compelled to produce Defendant Pareja's Driver's Logs from December 15, 2011, through January 3, 2012.  If Defendants do not have a Driver's Log for any date within the aforementioned period, Defendants will certify that such a document does not exist, and further certify whether one was ever created.

---

[6]  Plaintiff originally requested logs through January 18, 2012.  Plaintiff has since conceded that any logs documenting Defendant Pareja's status following the incident is not reasonably calculated to produce admissible evidence, and has therefore abandoned his request pertaining to Driver's Logs from January 3, 2012, through January 18, 2012.

### B.     Photographs Depicting Reenactment of Incident

Plaintiff requested that Defendants produce photographs related to the January 3, 2012 incident.  Defendants objected insofar as they claimed certain photographs depicting a reenactment of the incident were protected as non-discoverable by the work product protection.  The court agrees with Defendants.

Defendants represent that the set of photographs was taken on April 5, 2012, over three months following the incident and after defense counsel was retained.  Additionally, the photographs depict a reenactment of the incident, which is reasonably assumed to be related to defending the instant action.  The court has little trouble concluding that the photographs were prepared in anticipation of litigation by Defendants' representative.  Accordingly, Defendants will not be ordered to provide copies of the photographs depicting a reenactment of the January 3, 2012 incident.

### C.     Frontier Adjuster Report

Plaintiff requested Defendants produce the insurance adjuster report prepared by Peter P. Tarsi.  Defendants objected, claiming that the report was protected as non-discoverable work product.  The court agrees with Defendants.

The court concludes that the report was prepared in anticipation of litigation.  The report is dated March 10, 2012, which was over two months from the date of the accident.  Furthermore, the report indicates that Attorney William L.S. Ross, counsel for Beck Aluminum Alloys, had contacted Defendant Predator Trucking on February 28, 2012, and relayed that Plaintiff had obtained counsel in connection with the January 3, 2012 incident.  Although the report was created several weeks prior to Defendants' retaining defense counsel, the chance of

litigation was certainly more than a "mere possibility."  Accordingly, the court will not compel Defendants to produce the March 10, 2012 report.

The same cannot be said of the photographs contained in the report. The court will compel Defendants to produce the photographs attached to the March 10, 2012 report.  The report itself indicates that these photographs were created by the South Lebanon Police.  Although the March 10, 2012 report was created by Defendants' representative, the same cannot be said for the photographs attached thereto.  Accordingly, Defendants will be compelled to produce the photographs attached to the March 10, 2012 report.

### D.    TCS-ONE Claims File

Plaintiff's broad request for discovery also includes a Claims File, which contains, *inter alia*, a document titled "Major Loss Report."  Defendants objected, claiming that the report was protected as non-discoverable work product. After review, the court concludes that the file contains documents that were prepared in the ordinary course of business and are, therefore, discoverable.  A document, prepared by Wendy Griffin, was prepared on February 16, 2012, slightly more than a month following the January 3, 2012 incident, and before Defendants became aware that Plaintiff had retained counsel.  (*See supra*, Part III.C.)  While there may have been a possibility of litigation as of February 16, 2012, as there is following any injury-causing event, the court cannot conclude the document was prepared in *anticipation* of litigation.

However, the February 16, 2012 document also contains work product of the adjusters in the nature of assessments.  The court concludes this information to be non-discoverable and will permit Defendants to redact any work product in the

nature of valuations, reserves, opinions, and mental impressions.  Furthermore, Defendants will be entitled to withhold any portion of the claims file that the court has ruled is non-discoverable.  Accordingly, Defendants will be compelled to produce, subject to redaction and exclusion in accordance with this memorandum, the claims file that was submitted to the court as Exhibit D for its *in camera* inspection.

### E.   Audits

Plaintiff requested that Defendants provide all DOT audits and exit reports from January 3, 2007, through the present.  Defendants objected, claiming the request was overly broad and unduly burdensome.  Plaintiff has since limited his request to coincide with the dates of Defendant Pareja's employment, *i.e.*, October 9, 2010, until January 3, 2012.  The court finds that Defendants have failed to sustain their burden in demonstrating that Plaintiff's request would be overly burdensome.

At this stage of the litigation, the court will exercise its discretion in line with the broad scope of discovery.  While the court questions whether the audits for October 9, 2010, through January 3, 2012, will be admissible as relevant in and of themselves, the court cannot definitively conclude that such evidence will not lead to the discovery of admissible evidence.  Accordingly, Defendants will be compelled to produce DOT audits from October 9, 2010, through January 3, 2012. If Defendants do not have a corresponding audit for any time within the aforementioned period, Defendants will certify that such a document does not exist.

**IV.**        **Conclusion**

Based on the foregoing reasons, Plaintiff's motion to compel will be granted to the extent it seeks production of: (a) Defendant Pareja's Driver's Logs from December 15, 2011, through January 3, 2012 (*see supra*, Part III.A); (b) photographs taken by the South Lebanon Police Department that are attached to the March 10, 2012 report (*see supra*, Part III.C); (c) the claims file, including the February 16, 2012 report completed by Wendy Griffin, subject to redactions for adjuster's work product and otherwise limited by this memorandum (*see supra*, Part III.D); and (d) DOT Audits from October 9, 2010, through January 3, 2012 (*see supra*, Part III.E).  Plaintiff's motion to compel will be denied in all other respects.

An appropriate order will issue.

S/Sylvia H. Rambo
United States District Judge

Dated: February   10, 2014.